[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Kenneth Howard appeals from his conviction in the Clark County Municipal Court of operating a motor vehicle while under the influence of alcohol pursuant to his no contest plea.
Deputy Mike Owens of the Clark County Sheriff's office testified he was dispatched to 3852 Mitchell Road at approximately 6:00 a.m. to investigate an accident. Upon his arrival Owens found the defendant's vehicle parked partway in the roadway and part in a beanfield. Owens found the defendant behind the wheel, passed out, with the motor running. (Tr. 21).
Owens testified that when he opened the defendant's car door, the defendant woke up, turned off the motor and threw the keys on the floor. (Tr. 21). Owens said the defendant was disoriented and said he got lost. Owens said the defendant smelled of a strong odor of alcohol, had slurred speech, and his eyes were red.
Owens testified that the defendant was unsteady on his feet and failed a series of field sobriety tests. (Tr. 22, 23). He said he arrested the defendant and asked him to take a breathalyzer test. When the defendant failed to cooperate, Owens considered defendant's action to be a refusal of the test.
George Stanley testified he was the tow truck operator who was dispatched to tow the defendant's vehicle out of the ditch on Mitchell Road. He said the rear end of defendant's vehicle was mired down in a ditch and the front end was on the berm of the road.
Stanley said the front rim of the car's front tire was marred down in the grass so the vehicle was not operable. He said he had to winch the vehicle back on the roadway. (Tr. 5).
The defendant testified he had consumed three or four beers on the night in question at Danny's Bar. He said he was out in Pitchin on a back road at about 1:00 a.m. when a tire blew on his car. He said he pulled into a driveway to seek help and when he saw no lights on in the house he backed his car up into a beanfield.
Howard testified that when he could not get his car out of the field, he turned the engine off, put the car keys in his pocket and fell asleep. He said a police officer arrived and woke him up. Howard said when the officer requested he perform sobriety tests he asked for an attorney to be present before he performed the tests. He testified he was arrested before he performed the sobriety tests. He also said he did not refuse to take the breathalyzer, but only had difficulty understanding the instructions in using the machine.
Prior to trial, Howard moved to suppress the results of his sobriety tests, any statements by him to the officer, and the finding that he "failed to submit to breathalyzer." He also argued he could not be found guilty of operating a motor vehicle under the influence of alcohol "due to the inability of the car to be moved on its own."
The trial court made the following findings of fact and conclusions of law:
 Field sobriety tests were administered to Defendant and afterwards Defendant was placed in custody and transported to the Ohio State Patrol post for a breath test.
 Defendant was advised of his rights as indicated on the 2255 form and then failed to complete the breath test and was marked for refusal.
 Based on the facts as the Court finds them, the Court finds that there was no improper custodial interrogation of Defendant in violation of his Miranda rights. Defendant's responses to Deputies' questions occurred during the investigative stage of the stop prior to arrest. Likewise the Field Sobriety Tests were administered prior to Defendant being placed under arrest. Even if the Court finds [which it does not] that Defendant requested an attorney prior to said questions or tests, Defendant's rights were not violated by the Deputies proceeding with said questions and tests.
 It was not at a critical stage as defined by Law which would entitle Defendant to an attorney. The fact that the Deputy prematurely advised Defendant of his Miranda Rights did not result in the creation of a right of Defendant to an attorney in a non-custodial setting. Secondly, Defendant claims no refusal of the breath test took place since his vehicle was not operational, thus the deputies lacked probable cause to believe he was operating a vehicle under the influence of alcohol. Defendant's own testimony was that he drove the vehicle into the ditch and proceeded to get it stuck in the mud. He admitted that the car rocked back and forth but he could not extract it from the ditch.
 The Court finds that Defendant's vehicle was operational as that term is used in Ohio both at the earlier time when Defendant drove it into the ditch as well as at the time of the Deputies' arrival when they observed the motor running.
 Therefore Defendant is not entitled to a finding that no refusal of the breath test occurred. For the above reasons, Defendant's motion is not well taken and is overruled in all respects.
Appellant contends in his first assignment of error that the trial court should have suppressed any evidence of his intoxication because his vehicle was not "operational" at the time of his arrest.
Initially, the State argues that the issue of operability is not properly a basis for a pre-trial suppression question. InState v. McCain (December 4, 1990) Gallia App. No. 89-CA-22, unreported, Judge Harsha in a concurring opinion stated:
 "the question of in operability is not one which may properly form the basis of a motion to suppress. Operability is a factual question, regardless of whether it is an element of the offense or an affirmative defense. Such factual issues are not properly contested by a motion to suppress." McCain at 6.
A motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule. Statev. French (1995), 72 Ohio St.3d 446. In this case, Officer Mike Owens testified that he requested that the defendant perform a series of field sobriety tests at the scene. As such, the law would require that he have articulable suspicion to believe that the defendant operated his vehicle while under the influence of alcohol. Owens testified he arrested the defendant only after he failed these tests.
Although the defendant disputes Officer Owens' testimony as to when he was arrested, the trial court chose to believe Owens' version that the sobriety tests were conducted before he arrested the defendant.
Owens clearly had articulable suspicion to believe that the defendant operated his vehicle in an intoxicated condition prior to driving his car into the ditch. He found the defendant passed out in an intoxicated condition behind the wheel of a car mired in a ditch off a country road at 6:00 a.m. in the morning. The fact that the defendant's car was not operational at the time the defendant was arrested is not dispositive.
In Columbus v. Seabolt (1992), 79 Ohio App.3d 234, the Franklin County Court of Appeals held that a defendant who, while intoxicated, was seated in the driver's seat of a vehicle that was totally immobile could be convicted of operating a motor vehicle while intoxicated. In that case, the parties stipulated Ms. Seabolt was found sitting behind the wheel of a 1986 Nissan truck with he key in the ignition and the motor running. The truck was stuck in the mud with two tires blown out. It was 3:46 a.m. The defendant tested .235 after a breath test.
Judge McCormac wrote on behalf of the court at page 238 of the opinion:
 While a mere running of an engine of a totally immobile vehicle is not operation within the physical control part of the section, there still may be conviction of driving while under the influence of alcohol if there is sufficient direct or circumstantial evidence that defendant, while under the influence of alcohol, drove the automobile into the place where it became immobile. (Emphasis ours).
The Fourth District similarly addressed the situation of whether a defendant could escape prosecution for operating a vehicle while under the influence merely because the vehicle was inoperable at the time the police arrived although there was evidence the defendant drove the vehicle to the place it broke down. See, State v. Allberry (January 31, 1991), Hocking App. No. 90-CA-09, unreported. Judge Stephenson wrote on behalf of the court:
. . . The focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its in operability, it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control. To hold otherwise could conceivably allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution. Such a result was avoided in Commonwealth v. Taylor, supra 352 A.2d at 140, in which the defendant's actual driving ended in a collision that sent his vehicle off the highway. He was seated on the driver's side after the crash, and the court noted that `it could be inferred that the car was where it was and the condition in which it was because of appellant's choice `from which it followed that appellant was in `actual physical control' and so was `operating' the car. . . ." This `physical control' continued in the appellant after the collision had immobilized his car.'" Id. (Emphasis ours).
The circumstantial evidence that the defendant operated his vehicle on the roadway while intoxicated prior to driving off the road was very strong indeed. The trial court properly overruled defendant's suppression motion on the "operability" issue.
In his second assignment of error, appellant contends the trial court erred in not finding that the defendant was entitled to legal representation. He contends he requested a lawyer before he performed the field sobriety tests.
Ohio courts have held that Miranda Fifth Amendment protections do not apply to the administration of coordination tests. Piqua v. Hinger (1968), 15 Ohio St.2d 110, cert. den.393 U.S. 1001.
The United States Supreme Court rejected the argument that the extraction of a blood sample violated either the Fifth or Sixth Amendment. Schmerber v. California (1966), 384 U.S. 757.
There is no evidence that the police officers obtained any statements from the defendant after he was arrested. The trial court found the defendant was fully advised of his right to counsel before taking the breathalyzer test. The appellant's second assignment is likewise overruled.
Judgment of the trial court is Affirmed.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Michael F. Sheils
Joseph Juergens
Hon. Eugene Nevius